IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CARPET SUPER MART, INC.,          )
ARTHUR C. JORDAN, JR., and        )
JOYCE J. MOBLEY,                  )
                                  )
          Plaintiffs,             )
                                  )
     v..                          )          1:18CV398
                                  )
BENCHMARK INTERNATIONAL COMPANY   )
SALES SPECIALIST, LLC, DARA       )
SHAREEF, and BRIAN LOCKLEY,       )
                                  )
          Defendants.             )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before the court are Defendants' motions for the award of
attorneys' fees under the terms of their contract with
Plaintiffs. (Docs. 24, 42.) The first motion seeks attorneys'
fees for the trial court action in which Defendants prevailed.
(Doc. 24.) The second motion seeks the award of attorneys' fees
for defending against Plaintiffs' appeal. (Doc. 42.) For the
reasons stated herein, the court finds that both motions should
be granted insofar as fees should be awarded, but the court
defers its determination of a reasonable fee award pending the
process outlined in the conclusion of this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

A lengthy recitation of the facts is not necessary. The court incorporates the factual details from its order dismissing the action. See Carpet Super Mart, Inc. v. Benchmark Int'l Co. Sales Specialist, LLC, No. 1:18CV398, 2019 WL 1244086, at *1 (M.D.N.C. Mar. 18, 2019), aff'd, 789 F. App'x 379 (4th Cir. 2020). Additional relevant factual findings will be addressed as needed in this opinion.

Plaintiff Carpet Super Mart, Inc. ("Carpet Super Mart") is a North Carolina corporation that "was engaged in the business of commercial and residential sales and installation of carpet and flooring products." (First Amended Complaint ("Am. Compl.") (Doc. 21) ¶ 17.) Plaintiffs Arthur C. Jordan, Jr. ("Jordan") and Joyce J. Mobley ("Mobley") were the owners of Carpet Super Mart. (Id. ¶ 18.) Plaintiffs entered into a listing agreement (the "Agreement") with Defendant Benchmark International Company Sales Specialist, LLC ("Benchmark") on May 27, 2014, pursuant to which Benchmark agreed to provide certain services to facilitate the sale of Carpet Super Mart. (Id. ¶¶ 19, 25; Ex. A (Doc. 21-1).) Defendants Dara Shareef and Brian Lockley are each employed by Benchmark. (Am. Compl. (Doc. 21) ¶¶ 9-10.)

-2-

Plaintiffs' written agreement included attached terms and conditions ("Terms and Conditions"). (Am. Compl. (Doc. 21) Ex. B, Benchmark Standard Terms and Conditions (Doc. 21-2).) This court previously found that those Terms and Conditions were properly incorporated into the primary contract. Carpet Super Mart, 2019 WL 1244086, at *4. Those Terms and Conditions included an attorneys' fee provision that states:

> In the event that either party to this Agreement brings suit to enforce this Agreement, or for damages relating to a breach of this Agreement, the prevailing party shall be entitled to recover from the other, in addition to its damages or other remedy, all costs and reasonable attorney's fees, both at trial and the appellate level.

(Terms & Conditions (Doc. 21-2) ¶ 8(j).)

This diversity action was originally filed in North Carolina state court and subsequently removed to this court. (Doc. 1.) Plaintiffs' Complaint sought a declaratory judgment invalidating and/or altering the written contract. (Complaint ("Compl.") (Doc. 3) ¶¶ 63–68.) Plaintiffs also brought "alternative" claims for Fraud and Misrepresentation, (id. ¶¶ 69–89), Unfair and Deceptive Trade Practices ("UDTPA"), (id. ¶¶ 96–99), and a claim for Civil RICO, (id. ¶¶ 90–95), though they later dismissed that claim in their Amended Complaint, (see generally Am. Compl. (Doc. 21)). The RICO claim was withdrawn after Defendants filed their Rule 11 Motion for Sanctions, (Doc.

-3-

13), though the court declined to "draw any adverse inference" from the timing. Carpet Super Mart, 2019 WL 1244086, at *5 n.6.

This court dismissed Plaintiffs' Amended Complaint in its entirety and with prejudice on March 18, 2019. Id. at *6. Plaintiffs filed an appeal, and the Fourth Circuit subsequently affirmed this court in all respects. See Carpet Super Mart, Inc. v. Benchmark Int'l Co. Sales Specialist, LLC, 789 F. App'x 379, 380 (4th Cir. 2020).

### B. Procedural Background: Motions for Fees

Within fourteen days of this court entering judgment, Defendants filed a motion for trial-level attorneys' fees pursuant to Fed. R. Civ. P. 54(d). (Doc. 24.) Defendants also filed a supporting brief, (Defs. Mem. in Supp. of Rule 54(d) Mot. for Award of Attorneys' Trial Fees ("Defs.' Trial Br.") (Doc. 25)); Plaintiffs responded, (Pls' Resp. to Defs.' Mot. for Trial Fees ("Pls.' Trial Resp.") (Doc. 28)); and Defendants replied, (Defs.' Reply to Pls.' Resp. to Defs.' Mot. for Trial Fees ("Defs.' Trial Reply") (Doc. 30)). Defendants consulted with Plaintiffs as required by Local Rule of Civil Procedure 54.2. (Doc. 37.) The parties were unable to reach an agreement about trial fees; therefore, Defendants filed several sworn declarations and an affidavit to support their requested trial fees. (Docs. 31, 32, 33, 34, 35, 36, 38.) Defendants also filed

-4-

a supplemental memorandum summarizing the declarations. (Defs.'
Mem. Summarizing Trial Fees Declarations ("Defs.' Trial Summ.")
(Doc. 39).)

Within fourteen days of the Court of Appeals entering
judgment affirming this court's decision, Defendants filed a
motion for appellate attorneys' fees pursuant to Fed. R. Civ. P.
54(d). (Doc. 42.) Defendants also filed a supporting brief,
(Defs.' Mem. in Supp. of Mot. for Appellate Fees ("Defs.' Appeal
Br.") (Doc. 43).) Plaintiffs moved the court to file a response
out of time, (Docs. 46, 47), which this court granted, (Doc.
49). Plaintiffs filed their response, (Pls.' Resp. to Defs.'
Mot. for Appellate Fees ("Pls.' Appeal Resp.") (Doc. 45)), and
Defendants replied, (Defs.' Reply to Pls.' Resp. to Defs.' Mot.
for Appeal Fees ("Defs.' Appeal Reply") (Doc. 48)). Defendants
again consulted with Plaintiffs, pursuant to Local Rule of Civil
Procedure 54.2. (Doc. 50.) The parties were unable to reach an
agreement about appellate fees, so Defendants filed several
sworn declarations and an affidavit to support their requested
appellate fees. (Docs. 51, 52, 53, 54, 55, 56.) Defendants also
filed a supplemental memorandum summarizing the evidence
regarding appellate fees. (Defs.' Mem. Summarizing Appellate
Fees Declarations ("Defs.' Appeal Summ.") (Doc. 57).)

Plaintiffs have not requested a hearing, have not presented their own evidence, and have not contested any specific billing entry offered by Defendants. Both motions are ripe for ruling.

## C.  **Arguments**

Defendants argue that they are entitled to attorneys' fees pursuant to the Terms and Conditions of the Agreement. (Terms & Conditions (Doc. 21-2) ¶ 8(j).) Defendants argue they are entitled to fees, both for trial and appellate work, regardless of whether North Carolina or Florida law applies. (Defs.' Trial Br. (Doc. 25) at 10 n.4; Defs.' Appeal Br. (Doc. 43) at 5.)[1]

Plaintiffs' response to the trial fees motion raises two issues. First, Plaintiffs argue that the fee estimate provided by Defendants was four-to-five times higher than Plaintiffs' fees, suggesting unreasonableness. (Pls.' Trial Response (Doc. 28) at 3.) Second, Plaintiffs argue that, since Defendants' Motion for Sanctions, (Doc. 13), was denied, Defendants should not recover fees for work on that specific motion, (id. at 3–4).

In its response to Defendants' motion for attorneys' fees following the appeal, Plaintiffs repeated, almost verbatim, the first two arguments, and then added two more. (Pls.' Appeal

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-6-

Resp. (Doc. 45) at 4.) Plaintiffs now argue that the underlying action, a declaratory judgment action, was not a suit related to enforcement of the contract. (Id.) Therefore, they argue, the Agreement's attorneys' fee provision does not apply. Plaintiffs further argue that no North Carolina court has construed N.C. Gen. Stat. § 6-21.6 to apply to declaratory judgment actions, and that such a construction would be barred since the statute does not expressly include declaratory judgment actions.[2] (Id.)

The court addresses these arguments in two sections. First, the court considers whether fees should be awarded. Next, the court addresses reasonable fees. Finding that fees should be awarded, but unable to determine if the requested fees are

---

[2] The court notes that Plaintiffs did not raise their statutory or contract interpretation arguments until their response to Defendants' Motion for Appellate Attorneys' Fees. (Compare Pls.' Trial Resp. (Doc. 28), with Pls.' Appeal Resp. (Doc. 45).) Plaintiffs did not contest the propriety of awarding attorneys' fees at the trial level, pending appeal, only the estimated amount. (See Pls.' Trial Resp. (Doc. 28) at 3.) Plaintiffs' newly raised arguments are untimely as to the trial-level fees, but the court will still address the arguments as to both.

-7-

reasonable, the court defers its determination of a reasonable fee award and provides additional directions to the parties.[3]

## II.   <u>WHETHER FEES SHOULD BE AWARDED</u>

The court finds that trial and appellate attorneys' fees should be awarded pursuant to the fee provision in the Agreement's Terms and Conditions.

"Attorney's fees mandated by state statute are available when a federal court sits in diversity." <u>Cotton v. Slone</u>, 4 F.3d 176, 180 (2d Cir. 1993) (citing <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 259 n.31 (1975)); <u>see</u> <u>Legacy Data Access, Inc. v. Cadrillion, LLC</u>, 889 F.3d 158, 169 (4th Cir. 2018) (noting, implicitly, that attorneys' fees may be awarded under N.C. Gen. Stat. § 6-21.6 in a diversity action). Fees may be awarded based on state law in diversity actions

---

[3] "The court may decide issues of liability for fees before receiving submissions on the value of services." Fed. R. Civ. P. 54(d)(2)(C); <u>Carter v. Inc. Vill. of Ocean Beach</u>, 759 F.3d 159, 167 (2d Cir. 2014) ("Rule 54(d)(2)(C) is permissive; the court 'may' decide liability for fees first, but need not."); <u>see also</u> Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment ("The court is explicitly authorized to make a determination of the liability for fees before receiving submissions by the parties bearing on the amount of an award. This option may be appropriate in actions in which the liability issue is doubtful and the evaluation issues are numerous and complex."). Though the fee petition is not particularly complex, as explained below, the evaluation issues before the court are "numerous."

-8-

because "[t]he right to an award of attorneys' fees is considered a matter of substantive law." Astanza Design, LLC v. Giemme Stile, S.P.A., 220 F. Supp. 3d 641, 651 (M.D.N.C. 2016) (citing Alyeska Pipeline, 421 U.S. at 259 n.31). In North Carolina,[4] "[i]f a business contract governed by the laws of this State contains a reciprocal attorneys' fees provision, the court . . . may award reasonable attorneys' fees in accordance with

---

[4] "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The "Mandate Rule" requires a subordinate court to apply the law of a superior court as it pertains to "issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Courts should not follow the law-of-the-case doctrine if a previous decision was clearly erroneous and following it "would work a manifest injustice." Arizona, 460 U.S. at 618 n.8.

Even if Florida law is appropriate in light of the choice-of-law clause in paragraph 8(i) of the Terms and Conditions, see Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980), the court agrees with Defendants that the result here is the same under North Carolina or Florida law. For that reason, the court will continue to apply the law of North Carolina in interpreting the Agreement, since that is the law that was applied at the trial and appellate levels.

the terms of the business contract." N.C. Gen. Stat.
§ 6-21.6(c).[5]

A. <u>**Fee Provision Interpretation**</u>

The court begins with Plaintiffs' argument that the
underlying action is not covered by the fee provision in the
Agreement.

"When a contract is in writing and free from any ambiguity
which would require resort to extrinsic evidence, or the
consideration of disputed fact, the intention of the parties is
a question of law." <u>Lane v. Scarborough</u>, 284 N.C. 407, 410, 200
S.E.2d 622, 624 (1973). Here, Plaintiffs do not point to any
ambiguity that requires the consideration of extrinsic evidence.
Instead, they call the terms of the provision "express" and
argue those "express terms" exclude a declaratory judgment suit.
(Pls.' Appeal Resp. (Doc. 45) at 4.) Therefore, this court may
interpret the contract as a matter of law.

> "[W]hen the language of a contract is clear and
> unambiguous, the court must interpret the contract as
> written. . . ." <u>Root v. Allstate Ins. Co.</u>, 272 N.C.
> 580, 583, 158 S.E.2d 829, 832 (1968) (citation
> omitted). "The heart of a contract is the intention of

---

[5] The requirement that the business contract be signed "by
hand," N.C. Gen. Stat. § 6-21.6(b), is not in dispute, (<u>see</u> Doc.
22-1). Plaintiffs also do not contest that the attorneys' fees
provision in the Terms and Conditions qualifies as a "Reciprocal
attorneys' fees provision" under N.C. Gen. Stat. § 6-21.6(a)(4).
The fee provision contains definite terms and fits the statutory
definition.

the parties," so the trial court must "seek to determine the intention of the parties as shown by the whole written instrument." Id. (citation and quotation marks omitted).

Master v. Country Club of Landfall, 263 N.C. App. 181, 187, 823 S.E.2d 115, 120 (2018). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." Walton v. City of Raleigh, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996).

The court begins with the language of the provision itself. The standard Terms and Conditions of the Agreement state that:

> In the event that either party to this Agreement brings suit to enforce this Agreement, or for damages relating to a breach of this Agreement, the prevailing party shall be entitled to recover from the other, in addition to its damages or other remedy, all costs and reasonable attorney's fees, both at trial and the appellate level.

(Terms & Conditions (Doc. 21-2) ¶ 8(j) (emphasis added).) Plaintiffs contend that a declaratory judgment action is neither a suit to enforce the agreement nor one related to a breach. (Pls.' Appeal Resp. (Doc. 45) at 4.) Instead, Plaintiffs argue that their declaratory judgment action "merely requested the Court to construe the agreement." (Id.) The court disagrees with Plaintiffs.

First, the fee provision specifically mentions both suits to recover damages for a breach of the Agreement and suits to

-11-

enforce the Agreement. The inclusion of language allowing recovery for suits enforcing the Agreement, separate from a damages provision, indicates the parties intended to authorize recovery of attorneys' fees expended when a dispute arose without the necessity of incurring damages from a breach.

Second, though Plaintiffs might suggest the only suit to enforce the Agreement contemplated by the Terms and Conditions was a suit seeking specific enforcement or injunctive relief, the parties could have included more precise language, as they did for breach and damages. Instead, they left the language broad enough to include any suit to enforce the Agreement.

Third, the fee provision is broad by its own terms. The fee provision applies to suits by either party, and it includes pre- and post-breach actions. Plaintiffs' interpretation, however, would cabin the broad terms to exclude actions to invalidate the Agreement itself, (see Am. Compl. (Doc. 21) ¶¶ 64(a), (e)), an absurd result given the shared intent of the

-12-

parties to conclude the sale of the business, (see generally Doc. 21-1).[6]

Fourth, a declaratory judgment action has been construed as a suit to enforce other agreements in other contexts, strengthening the conclusion that the language of the fee provision includes declaratory judgment actions. See Hemric v. Groce, 154 N.C. App. 393, 398, 572 S.E.2d 254, 257 (2002) (suggesting a declaratory judgment action as one of the ways to enforce a consent judgment); DeMent v. Nationwide Mut. Ins. Co., 142 N.C. App. 598, 604, 544 S.E.2d 797, 801 (2001) (noting, in a declaratory judgment case, that third parties may bring actions to "enforce a contract"); see also Widman v. Keene, 721 F. App'x 772, 775-76 (10th Cir. 2018) (interpreting California law and classifying wife's declaratory judgment action to determine amount owed in settlement as an action to enforce a contract and awarding attorneys' fees); Rafael Rodriguez Barril, Inc. v.

---

[6] The fee provision also states that the parties may recover attorneys' fees, "in addition to its damages or other remedy . . . ." (Terms & Conditions (Doc. 21-1) ¶ 8(j).) A similar fee provision that included costs incurred pursuing all remedies was found to include declaratory judgment actions in at least one other case. See Fluor Corp. v. Citadel Equity Fund Ltd., Civil Action No. 3:08-CV-1556-B, 2011 WL 3820704, at *3 (N.D. Tex. Aug. 26, 2011) ("Citadel's argument that a declaratory judgment action is not a suit for enforcement of a right is irrelevant. The Indenture also allows party litigants to recover fees for a remedy, and a declaratory judgment is a type of remedy.").

-13-

Conbraco Indus., Inc., 619 F.3d 90, 92-93 (1st Cir. 2010)

(awarding attorneys' fees for breach of contract and declaratory

judgment action to enforce agreement);[7] Wis. Province of Soc'y of

Jesus v. Cassem, 373 F. Supp. 3d 378, 381, 385 (D. Conn. 2019)

(construing declaratory judgment action as an action to "enforce

a contractual right"); Principal Life Ins. Co. v. Robinson, No.

CV 00-1345-BR, 2003 WL 27383315, at *2 (D. Or. Mar. 21, 2003)

(noting that Oregon considers a declaratory judgment action

interpreting a lease as one to enforce a contract, thus meriting

attorneys' fees); Pic 'N Pay Stores, Inc. v. Jessee, No. C.A.

79, 1986 WL 2148, at *1 (Tenn. Ct. App. Feb. 12, 1986) (refusing

to "emasculate" a contract's fee provision based on argument

---

[7] Rafael Rodriguez Barril discussed whether the action in
question was captured by a fee provision similar to the one at
bar. That provision stated fees should be awarded if "either
party brings suit to enforce the terms of this [a]greement."
Rafael Rodriguez Barril, 619 F.3d at 93. The court found the
declaratory judgment action was captured by the provision
"insofar as [plaintiff] is suing for breach of contract and for
injunctive and declaratory relief seeking specific performance
of the contract." Id. Plaintiffs here sought an enforceable
order and judgment regarding the Agreement. (See Complaint (Doc.
3) ¶ 68.) The practical effect of their suit was to enforce the
Agreement as they read it. Cf. Branch Banking & Trust Co. v.
Harrelson Bldg., LLC, 238 N.C. App. 362, 768 S.E.2d 200, 2014 WL
7472955, at *3-5 (2014) (unpublished table decision) (analyzing
a declaratory judgment action involving a lease to determine if
a "judgment adjudicating the existence or nonexistence of the
lease will directly and primarily affect defendant-lessors'
vested interest in the leasehold" (emphasis omitted)).

-14-

that declaratory judgment action was not an action to enforce a provision of a lease); cf. BKCAP, LLC v. Captec Franchise Tr. 2000-1, 701 F. Supp. 2d 1030, 1035 (N.D. Ind. 2010) (finding that a fee provision did not cover defending against a declaratory judgment action when the provision, by its own terms, only applied to actions by a lender to enforce its rights).[8]

Fifth, Plaintiffs did not bring a strict breach of contract action, but the declaratory judgment action was a "suit to enforce this Agreement" as the Plaintiffs wanted it enforced,

---

[8] There have been some other contexts where declaratory judgments did not qualify for attorneys' fees or as enforcement actions. In the §§ 1983, 1988 context, the Supreme Court has noted that a "declaratory judgment . . . will constitute relief, for purposes of § 1988, if, and only if, it affects the behavior of the defendant toward the plaintiff." Rhodes v. Stewart, 488 U.S. 1, 4 (1988). The Rhodes Court noted that the plaintiffs, former inmates, would not receive the benefit of their judgment since they were no longer prisoners. Id. Such is not the case here.

Some district courts have also found that declaratory judgment actions in the ERISA context are not suits to enforce the terms of an ERISA plan, but are actions to clarify obligations. See Siskin Enters., Inc. v. W.B. Stoddard, Jr., Inc., 147 F. Supp. 2d 1125, 1129 (D. Utah 2001); Conn. Gen. Life Ins. Co. v. Cole, 821 F. Supp. 193 (S.D.N.Y. 1993). ERISA plans, however, are not the same as general commercial contracts. In Siskin, the plaintiff sought a judgment validating its previous decision to terminate an agreement. Siskin Enters., 147 F. Supp. 2d at 1129. The court in Connecticut General Life Insurance also left open the possibility that certain declaratory judgment actions can be enforcement actions under ERISA. Conn. Gen. Life Ins., 821 F. Supp. at 197.

-15-

(Terms & Conditions (Doc. 21-2) ¶ 8(j)), and Plaintiffs would not have had standing had they not had an enforceable right. In order to have standing to bring a declaratory judgment action, an actual controversy must exist, though a plaintiff need not allege a more "traditional cause of action." See, e.g., Goldston v. State, 361 N.C. 26, 33, 637 S.E.2d 876, 881 (2006) ("[A] declaratory judgment should issue '(1) when [it] will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" (quoting Augur v. Augur, 356 N.C. 582, 588, 573 S.E.2d 125, 130 (2002))). A party may not bring a declaratory judgment action unless they are a "real party in interest," and a "real party in interest is one who benefits from or is harmed by the outcome of the case and by substantive law has the legal right to enforce the claim in question." Beachcomber Props., L.L.C. v. Station One, Inc., 169 N.C. App. 820, 824, 611 S.E.2d 191, 193-94 (2005) (emphasis added). "Absent an enforceable contract right, an action for declaratory relief to construe or apply a contract will not lie." Id. at 824, 611 S.E.2d at 194 (quoting Terrell v. Lawyers Mut. Liab. Ins. Co., 131 N.C. App. 655, 661, 507 S.E.2d 923, 926 (1998) (citations omitted)).

Plaintiffs were a "real party in interest" because they had a "legal right to enforce" the Agreement, and they wanted it construed differently than what was written. That construction would ultimately determine enforcement. As Defendants point out, Plaintiffs brought this action, in large part, to determine the following questions:

    a.   Whether there was a meeting of the minds regarding all material terms of the listing agreement;

    b.   If so, what are the material terms of the listing agreement;

    c.   How is the commission calculated;

    d.   What is the amount of the commission;

    e.   If the listing agreement is unenforceable because there was no meeting of the minds on all material terms, what is the reasonable value of services provided by the Defendant Benchmark;

    f.   Have the Plaintiffs tendered the full amount of commission that is due and payable to the Defendant.

(Compl. (Doc. 3) ¶ 64.) Had the court answered in the negative to the first question, the Agreement would not have been enforceable at all. Had the court answered any of the other questions in a way that differed from the express terms of the Agreement, then the Agreement would have been enforced as Plaintiffs sought to have it enforced. Instead, the agreement is

-17-

enforceable as it is written, not as Plaintiffs sought to have it interpreted in their declaratory judgment action.

Sixth, the court's construction of the agreement was authoritative. Defendants argue that Plaintiffs are attempting to place form over function. The court does not find that analogy compelling. The court does find compelling the fact that Plaintiffs were asking this court to construe its obligations, and once the court issued its judgment, the parties were obligated to comply. Had they not, this court possessed the power, upon notice, to issue further orders to compel compliance. 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."). "The power of the court to retain jurisdiction to give complete and effectual relief is well established, and it follows without any serious controversy that the court may make such further orders to give effect to a declaratory judgement as shall seem meet and proper." Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co., 966 F.2d 847, 852 (4th Cir. 1992) (quoting Anderson, Actions for Declaratory Judgments § 451 (2d ed. 1951 and Supp. 1991)). The requested relief need not have been proven or requested during the underlying declaratory judgment action. Id. at 582.

-18-

As other circuits have held, § 2202 allows "the prevailing party in a declaratory judgment action [to] seek further relief in the form of damages or an injunction." See, e.g., United Teacher Assocs. Ins. v. Union Labor Life Ins., 414 F.3d 558, 570 (5th Cir. 2005) (quoting Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 537 (5th Cir. 1978)) (internal quotation marks omitted) (also noting that "[o]ther circuits that have addressed the type of relief available under § 2202 have reached similar conclusions" and listing cases); see also Gant v. Grand Lodge of Tex., 12 F.3d 998, 1002 (10th Cir. 1993) (explaining that Declaratory Judgment Act "permits the original judgment to be supplemented either by damages or by equitable relief even though coercive relief might have been available at the time of the declaratory action" (quoting 10A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure, § 2771, at 765-67 (2d ed. 1983))). The Fourth Circuit has "long recognized the discretion afforded to district courts in determining whether to grant declaratory relief" and consequently reviews decisions under the abuse-of-discretion standard. See Travelers Indem. v. Miller Bldg. Corp., 221 Fed. App'x 265, 267 (4th Cir. 2007) (discussing 28 U.S.C. § 2201).However, before deciding whether to grant such relief under § 2202, the court must hold a hearing (which it did on September 10, 2019). Ins. Servs. of Beaufort, Inc., 966 F.2d at 853.

Steves & Sons, Inc. v. JELD-WEN, Inc., Civil Action No. 3:16-cv-545, 2019 WL 6138200, at *7 (E.D. Va. Nov. 19, 2019); see also Horn & Hardart Co. v. Nat'l Rail Passenger Corp., 843 F.2d 546, 548 (D.C. Cir. 1988) ("The 'further relief' provisions of both state and federal declaratory judgment statutes clearly anticipate ancillary or subsequent coercion to make an original declaratory judgment effective. Neither a completed appeal, nor a considerable period of delay after the trial court ruling

-19-

terminates this authority.”). As demonstrated by these authorities, Plaintiffs’ declaratory judgment was no idle exercise in contract interpretation.

In conclusion, the court finds that the declaratory judgment action was an action to enforce the Agreement. Therefore, the attorneys’ fees provision of the Terms and Conditions applies.

Finally, the court notes that though Defendants did not “bring” any suit, their defense was an effort to preserve and enforce the Agreement as written. “The plain and unambiguous meaning of the word ‘enforcing’ in the Agreement is to mandate compliance with existing contractual obligations.” Siskin Enters., Inc. v. W.B. Stoddard, Jr., Inc., 147 F. Supp. 2d 1125, 1129 (D. Utah 2001). Defendants sought to compel Plaintiffs’ compliance with “existing contractual obligations.”

**B.   Whether N.C. Gen. Stat. § 6-21.6 Applies**

Turning to Plaintiffs’ second argument, it is true that no North Carolina court has yet to apply § 6-21.6 in the declaratory judgment context. However, the plain language of the statute permits application in this situation. The statute defines reciprocal attorneys’ fees provisions as:

> Provisions in any written business contract by which each party to the contract agrees, in the manner set out in subsection (b) of this section, upon the terms

-20-

and subject to the conditions set forth in the
contract that are made applicable to all parties, to
pay or reimburse the other parties for attorneys' fees
and expenses incurred <u>by reason of any suit, action,</u>
<u>proceeding</u>, or arbitration involving the business
contract.

N.C. Gen. Stat. § 6-21.6(a)(4) (emphasis added). The statute

goes on to say that "[i]f a business contract governed by the

laws of this State contains a reciprocal attorneys' fees

provision, the court or arbitrator <u>in any suit, action,</u>

<u>proceeding</u>, or arbitration involving the business contract may

award reasonable attorneys' fees . . . ." <u>Id.</u> § 6-21.6(c)

(emphasis added).[9]

_____

[9] Plaintiffs also raise the argument that, if the North
Carolina Legislature wanted to include declaratory judgment
actions in § 6-21.6, they would have listed them as they list
another specific type of action in another provision. (Pls.'
Appeal Resp. (Doc. 45) at 4.) Plaintiffs cite N.C. Gen. Stat.
§ 6-21(2). That provision, dealing with costs in actions
construing wills and estates, allows attorneys' fees in "any
action or proceeding which may require the construction of any
will or trust agreement, or fix the rights and duties of parties
thereunder." N.C. Gen. Stat. § 6-21(2). Plaintiffs are
essentially arguing that since the legislature included actions
to construe wills, then any omission of actions to construe
other documents is an intentional point to exclude them in other
statutory provisions. The court disagrees.

    With a related interpretative canon, courts have noted that
a negative inference must be a "sensible inference that the term
left out must have been meant to be excluded." <u>United States v.</u>
<u>Hawley</u>, 919 F.3d 252, 256 (4th Cir. 2019). The inference here is
not sensible. First, § 6-21(2) does not expressly mention
declaratory judgments, but actions to construe wills. The
legislature did not expressly include declaratory judgments
                                        (Footnote continued)

-21-

A declaratory judgment action falls into the statute's definition of what constitutes reciprocal attorneys' fees: "attorneys' fees and expenses incurred by reason of any suit, action, proceeding . . . involving the business contract." Id. § 6-21.6(a)(4) (emphasis added). The underlying declaratory judgment action in this case asked the court to determine the rights of the parties as it pertained to the Agreement. (Compl. (Doc. 3) ¶¶ 64–68.) It was a "suit, action, [and] proceeding" directly "involving the business contract."

Even if the declaratory judgment action was somehow not captured by § 6-21.6, Plaintiffs' Complaint listed several other causes of action directly involving the business contract at least one of which would have warranted an award of attorneys' fees. Plaintiffs brought claims for fraud, civil RICO, and unfair and deceptive trade practices. (Compl. (Doc. 3) ¶¶ 69-99.) At least one court has awarded fees under § 6-21.6

---

anywhere in § 6-21. Second, the language in § 6-21.6 is broad and includes "any suit, action, proceeding, or arbitration involving the business contract." It is not a "sensible inference" that such capacious language is cabined by a reference to the construction of wills in a different statutory provision. Finally, § 6-21 is a listing of miscellaneous civil actions where costs, including fees, can be apportioned within the discretion of the court. By contrast, § 6-21.6 deals with a separate, specific category of actions: those involving business contracts with fee provisions. Any inferences drawn from the general civil actions listed in § 6-21 are of limited value in § 6-21.6's specialized context.

for unfair and deceptive trade practice claims. See Insight
Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC, No.
14 CVS 1783, 2018 WL 3327799, at *3, *6 (N.C. Super. July 6,
2018) (awarding fees under § 6-21.6 for breach of contract and
constructive fraud claims, as well as for time spent pursuing
UDPTA claims and defending against UDTPA counterclaims); cf.
Peters v. Cadrillion, LLC, Civil Action No. 3:15-CV-00163-FDW-
DCK, 2019 WL 3756391, at *3 (W.D.N.C. Aug. 8, 2019) (declining
to award fees under § 6-21.6 for unfair and deceptive trade
claims because the motion for fees was not timely filed);
Liberty Mut. Fire Ins. Co. v. KB Home, No. 5:13-CV-831-BR, 2015
WL 4877835, at *4 (E.D.N.C. Aug. 14, 2015) (declining to award
fees under § 6-21.6 for declaratory judgment and unfair and
deceptive trade claims, among others, since the contract's fee
provision restricted it to matters resolved in arbitration);
Hometown Servs., Inc. v. Equitylock Sols., Inc., Civil No. 1:13-
cv-00304-MR-DLH, 2014 WL 5335928, at *3 (W.D.N.C. Oct. 20, 2014)
(declining, in an unfair and deceptive trade practices case, to
award fees because the requesting party was not the prevailing
party, nor were requested fees reasonable). Even if declaratory

judgment actions did not merit fees under § 6-21.6, fees would have been appropriate in at least one other cause of action.[10]

Finally, North Carolina is one of the many states that has adopted the Uniform Declaratory Judgment Act ("UDJA"). <u>Swaps, LLC v. ASL Props., Inc.</u>, 250 N.C. App. 264, 266, 791 S.E.2d 711, 713 (2016). "[T]he Uniform Declaratory Judgment Act 'shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.'" <u>Id.</u> (quoting N.C. Gen. Stat. § 1-266). Though North Carolina's courts have not directly held that a declaratory judgment action involving a contract is an action to enforce the contract, at least two other UDJA jurisdictions have. <u>All. Indem. Co. v. Kerns</u>, 54 Kan. App. 2d 155, 163, 398 P.3d 198, 205 (2017) (noting that attorneys' fees are available in certain declaratory judgment actions against insurers, though the UDJA itself did not permit fees in the defense of a declaratory

---

[10] The court notes that North Carolina's Unfair and Deceptive Trade Practices Act has its own attorneys' fee provision. <u>See</u> N.C. Gen. Stat. § 75-16.1. However, at least one court has also awarded fees for time spent on UDTPA claims under N.C. Gen. Stat. § 6-21.6. <u>See</u> <u>Insight Health</u>, 2018 WL 3327799, at *3, *6.

-24-

judgment action);[11] <u>Ladum v. City of Reedsport</u>, 83 Or. App. 666, 670, 733 P.2d 66, 68 (1987) ("Because the court construed the contested clauses in defendant's favor, it prevailed on the significant disputed issues and the court erred in denying its request for attorneys' fees."); <u>see also</u> <u>Feldman v. KPMG LLP</u>, 438 S.W.3d 678, 685 (Tex. App. 2014) (noting the UDJA, as adopted in Texas, statutorily permits an award of attorneys' fees); <u>Trs. of Indiana Univ. v. Buxbaum</u>, 315 Mont. 210, 227, 69 P.3d 663, 674 (2003) (finding an award of attorneys' fees appropriate under the "supplemental relief" provision of the UDJA).[12]

---

[11] Of course, N.C. Gen. Stat. § 6-21.6 is the statutory basis for fees here, not North Carolina's UDJA. For that reason, the Kansas Supreme Court's holdings on the issue of the UDJA itself authorizing fees is inapposite. The court cites <u>Kerns</u> for the proposition that declaratory judgments have been viewed as actions to enforce agreements. Even though the <u>Kerns</u> court found fees were not merited, it reached that conclusion based on reasoning about a dismissal of the suit without prejudice, reasoning, that does not apply here.

[12] North Carolina adopted the "supplemental relief" portion of the UDJA at N.C. Gen. Stat. § 1-259. That provision states that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."

In summary, the court finds that the attorneys' fees provision in the Agreement applies to the underlying suit. The court also finds that N.C. Gen. Stat. § 6-21.6 applies to the underlying suit.[13] Since Plaintiffs do not contest that Defendants were the prevailing party at both the trial and appellate levels,[14] the court now turns to the calculation of reasonable attorneys' fees.

---

[13] This is so despite the following public policy analysis by a North Carolina Court of Appeals panel. In determining if North Carolina's Uniform Declaratory Judgment Act (N.C. Gen. Stat. § 1-253 et seq.) included attorneys' fees in its "costs" provision, the panel held it did not, noting that "[p]articularly in contract or property disputes where the cost of litigation might exceed any monetary recovery, enterprising litigants would have tremendous incentives to race to the courthouse with a request for declaratory relief rather than pursuing a traditional, affirmative claim for relief." Swaps, LLC v. ASL Props., Inc., 250 N.C. App. 264, 267-68, 791 S.E.2d 711, 714 (2016).

The case at bar is distinguishable in two important ways. First, Defendants, not Plaintiffs, seek attorneys' fees. Awarding fees to Defendants does not risk encouraging other plaintiffs to bring declaratory judgment actions as substitutes for a more "affirmative claim for relief." Id. Second, this case does not deal with N.C. Gen. Stat. § 1-263, but a reciprocal contractual provision and § 6-21.6, an independent statutory basis for the award of attorneys' fees.

[14] Plaintiffs contend that Defendants were not the prevailing party on their Motion for Sanctions. (Pls.' Trial Resp. (Doc. 25) at 3-4.) This issue will be addressed in Section III.B, infra, when the court evaluates reasonable trial fees.

## III. **REASONABLE FEES**

Though the court finds that fees should be awarded, the court is unable to determine whether the fees requested are reasonable. The court can, however, determine that the requested billing rates, both for trial and appellate fees, are reasonable.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).[15]

Normally, "[i]n a diversity case, federal law controls in regard to the assessment of costs" even if state statute permits the awarding of fees. Gobbo Farms & Orchards v. Poole Chem. Co., 81 F.3d 122, 123 (10th Cir. 1996) (quoting Chaparral Res., Inc. v. Monsanto Co., 849 F.2d 1286, 1291-92 (10th Cir. 1988)); see Best Med. Int'l, Inc. v. Eckert & Ziegler Nuclitec GmbH, 565 F. App'x 232, 237 (4th Cir. 2014) (utilizing federal law to calculate fees in diversity action); Cargill, Inc. v. WDS, Inc.,

---

[15] Hensley, of course, did not deal with N.C. Gen. Stat. § 6-21.6, nor did it deal with any North Carolina law. Still, the conclusion about the burden being on the moving party is sound. See Hamilton v. Memorex Telex Corp., 118 N.C. App. 1, 16, 454 S.E.2d 278, 286 (1995) (noting that North Carolina courts find federal court rulings "instructive" when dealing with attorneys' fees).

-27-

Docket No. 3:16-cv-00848-FDW-DSC, 2018 WL 1525352, at *18
(W.D.N.C. Mar. 28, 2018); see also Ray v. Wells Fargo Bank NA,
No. CV 11-1477 AHM (JCx), 2012 WL 2343283, at *1 (C.D. Cal.
June 20, 2012) (collecting cases and noting that Rule 54(d)
governs an award of costs in diversity cases).

However, "[w]hen a 'case is a diversity action based on
state contract law, the contract, including its provisions on
attorneys' fees, is to be interpreted using state law.'" Peters,
2019 WL 3756391, at *5 (quoting W. Insulation, LP v. Moore, 362
F. App'x 375, 379 (4th Cir. 2010)); see also Zoroastrian Ctr. &
Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of
N.Y., 822 F.3d 739, 754 (4th Cir. 2016). Without expressly
holding that North Carolina law governs the assessment of
reasonable fees, the Fourth Circuit directed a district court,
on remand, to apply the factors in N.C. Gen. Stat. § 6-21.6(c)
when calculating contractual reciprocal attorneys' fees under
that statute. Legacy Data, 889 F.3d at 169. In the case at bar,
North Carolina law continues to govern the Agreement. This court
will therefore determine reasonable attorneys' fees utilizing
the factors in N.C. Gen. Stat. § 6-21.6(c).

"[T]o determine if the statutory award of attorneys' fees
is reasonable the record must contain findings of fact as to the
time and labor expended, the skill required, the customary fee

-28-

for like work, and the experience or ability of the attorney."
WFC Lynnwood I LLC v. Lee of Raleigh, Inc., 259 N.C. App. 925,
933, 817 S.E.2d 437, 444 (2018); Parker v. Hensley, 175 N.C.
App. 740, 742, 625 S.E.2d 182, 184-85 (2006). As noted, N.C.
Gen. Stat. § 6-21.6(c) sets out several factors for a court to
consider in making such findings. Those factors include:

(1) The amount in controversy and the results
    obtained.

(2) The reasonableness of the time and labor
    expended, and the billing rates charged, by the
    attorneys.

(3) The novelty and difficulty of the questions
    raised in the action.

(4) The skill required to perform properly the legal
    services rendered.

(5) The relative economic circumstances of the
    parties.

(6) Settlement offers made prior to the institution
    of the action.

(7) Offers of judgment pursuant to Rule 68 of the
    North Carolina Rules of Civil Procedure and
    whether judgment finally obtained was more
    favorable than such offers.

(8) Whether a party unjustly exercised superior
    economic bargaining power in the conduct of the
    action.

(9) The timing of settlement offers.

(10) The amounts of settlement offers as compared to
     the verdict.

-29-

(11) The extent to which the party seeking attorneys'
fees prevailed in the action.

(12) The amount of attorneys' fees awarded in similar
cases.

(13) The terms of the business contract.

N.C. Gen. Stat. § 6-21.6(c).

For the reasons set out herein, the court is unable to
assess most of these factors with the evidence currently before
it. However, the court can assess one factor on the evidence
before it: the reasonableness of the requested rates. The court
will first address trial fees before turning to appellate fees.

## A.    **Defendants' Trial Fees**

Defendants move this court to award fees in the amount of
$116,324 for services rendered during the underlying suit's
trial phase. (Defs.' Trial Summ. (Doc. 39) at 4.) Defense
counsel actually provided $127,401 in legal services for its
trial services but provided a roughly ten-percent discount to
its clients. (Id.; Affidavit of Mark A. Stafford ("Stafford
Aff.") (Doc. 31) ¶ 14.) This total, according to Defendants,
results in 339.4 hours billed, a reduction from the 371.1 hours
that were actually expended. (Defs.' Trial Summ. (Doc. 39) at
5.) Plaintiffs did not submit any affidavits or declarations of
their own but did initially contest Defendants' estimated fees
since the estimate was four-to-five times the amount of fees

-30-

incurred by Plaintiffs. (Pls.' Trial Resp. (Doc. 28) at 3.) Plaintiffs have not requested an evidentiary hearing or otherwise challenged Defendants' evidence.

Defendants submitted six declarations[16] from attorneys who worked on this matter. M. Cabell Clay was counsel of record for Defendants and is with Moore & Van Allen PLLC ("MVA") in North Carolina. (Declaration of M. Cabell Clay ("Clay Decl.") (Doc. 33) ¶ 1.) Ms. Clay graduated from William & Mary Law School, has been admitted to practice in North Carolina since 2008, and primarily practices in complex commercial litigation. (Id. ¶¶ 2-4.) Since 2014, she has been named a "Rising Star" in business litigation by North Carolina Super Lawyers, was named a "Young Gun" by Business North Carolina Legal Elite, and was recognized by the Women Lawyers of Charlotte as the 2018 Woman of the Year. (Id. ¶ 5.)

William M. Butler is also with MVA and also served as counsel to Defendants. (Declaration of William M. Butler ("Butler Decl.") (Doc. 32) ¶ 1.) Mr. Butler graduated from the University of North Carolina School of Law in 2015 and has been

---

[16] Plaintiffs submitted unsworn declarations, made under penalty of perjury, which are permissible in lieu of affidavits. See 28 U.S.C. § 1746; see also Willard v. Internal Revenue Serv., 776 F.2d 100, 102 n.3 (4th Cir. 1985) (citing § 1746 in the context of declarations attached to a motion for summary judgment).

a member of the North Carolina Bar since. (Id. ¶¶ 2-3.)
Mr. Butler's practice at MVA focuses on complex commercial
litigation and contractual disputes. (Id. ¶ 4.)

Jason H. Baruch is a partner at Holland & Knight LLP
("H&K"). (Declaration of Jason H. Baruch ("Baruch Decl.") (Doc.
38) ¶ 1.) Mr. Baruch graduated magna cum laude from the
University of Florida Levin College of Law in 2004. (Id. ¶ 2.)
Mr. Baruch is a member of the Florida State Bar and has
practiced law since 2005. (Id. ¶¶ 3-4.) Mr. Baruch's practice
focuses on complex commercial litigation and contract disputes.
(Id. ¶ 4.) Mr. Baruch is board-certified in Business Litigation
by the Florida Bar. (Second Declaration of Jason H. Baruch
("Second Baruch Decl.") (Doc. 52) ¶ 5.) He was also recognized
as among the "Florida Legal Elite" in Florida Trend Magazine in
2018, and has received many other accolades. (Id. ¶ 6.)

Anthony J. Palermo is an associate at H&K. (Declaration of
Anthony J. Palermo ("Palermo Decl.") (Doc. 35) ¶ 1.) Mr. Palermo
graduated from Harvard Law School in 2012 and is a member of the
Florida Bar. (Id. ¶¶ 2-3.) He has practiced law since 2012,
focusing on contract disputes and other commercial matters. (Id.
¶ 4.) In recognition of his successful practice, Mr. Palermo has
been named a "Rising Star" by several legal publications, was
appointed Vice Chair of the Florida Bar's Consumer Protection

Law Committee, and was hired by the State of Florida as a Special Assistant Attorney General for consumer protection and lending issues. (Id. ¶¶ 4-5.)

Finally, Paul J. Punzone is also an associate with H&K. (Declaration of Paul J. Punzone ("Punzone Decl.") (Doc. 34) ¶ 1.) Mr. Punzone graduate magna cum laude from the University of Florida Levin College of Law. (Id. ¶ 2.) He has practiced law since 2017, focusing on commercial contract and consumer protection law. (Id. ¶ 4.)

In support of the reasonableness of their fee requests, Defendants also submit the affidavit and declaration of two attorneys who were not directly involved in the action. Clinton Johnston is General Counsel for Benchmark. (Declaration of Clinton Johnston ("Johnston Decl.") (Doc. 36) ¶ 2.) Mark A. Stafford is a North Carolina attorney and partner with Nelson Mullins Riley & Scarborough LLP. (Stafford Aff. (Doc. 31) ¶¶ 1-2.)

### 1. **Reasonable Rates**

The court is only able to assess one factor at this time: the "reasonableness of the . . . billing rates charged, by the attorneys." N.C. Gen. Stat. § 6-21.6(c)(2).

Defendants seek the following hourly rates. Ms. Clay does not specify a rate in her declaration, but her timesheets show

-33-

that her hourly rate started at $395 per hour and eventually moved to $405. (Clay Decl. (Doc. 33), Ex. 1, MVA Invoices ("MVA Timesheets") (Doc. 33-1) at 4, 14; Defs.' Trial Summ. (Doc. 39) at 6.) Mr. Butler first billed at a rate of $285 per hour and then $300 per hour. (MVA Invoices (Doc. 33-1) at 4, 17; Defs. Time Summ. (Doc. 39) at 6.) Mr. Baruch requests an hourly rate of $435 per hour. (Baruch Decl. (Doc. 38) ¶ 9; Defs.' Trial Summ. (Doc. 39) at 6.) Mr. Punzone does not request a specific rate in his declaration but billed at $265 to $290 per hour. (Baruch Decl. (Doc. 38), Ex. 1, H&K Invoices ("H&K Timesheets") (Doc. 38-1) at 2; Defs.' Trial Summ. (Doc. 39) at 6.) Finally, Mr. Palermo billed at $325 to $360 per hour. (Palermo Decl. (Doc. 35) ¶ 8; Defs.' Trial Summ. (Doc. 39) at 6.)

In support of these rates, Defendants submitted the affidavit of Mark Stafford, a partner and litigator with Nelson Mullins, a law firm in North Carolina. (Stafford Aff. (Doc. 31) ¶¶ 1-2.) Mr. Stafford has been a member of the North Carolina Bar since 1989. (Id. ¶ 1.) Mr. Stafford's practice focuses on complex commercial litigation. (Id.) Mr. Stafford contends that, in North Carolina, for the type of legal work conducted in this action, the normal hourly rate for associates ranges from $240 to $410 per hour; for partners, the rate is between $375 to $695. (Id. ¶ 3.) Mr. Stafford's evaluation is based on his

-34-

personal experience with MVA attorneys, his peers' experiences with H&K's attorneys, as well as the type of actions in the underlying suit. (Id. ¶¶ 7–11.) Mr. Stafford is also familiar with rates charged by other commercial litigators in North Carolina. (Id. ¶ 4.)

Mr. Johnston, general counsel for Benchmark, stated that the rates charged by both MVA and H&K were reasonable. (Johnston Decl. (Doc. 36) ¶ 15.) Mr. Johnston also states that one of his duties is to procure outside legal services for Benchmark, a task that makes him familiar with rates charged by firms both in Florida and North Carolina. (Id. ¶¶ 14, 16–18.) Benchmark has paid higher rates for legal services than the rates they paid MVA and H&K in this matter, but it has paid similar rates for similar legal services. (Id. ¶ 12.)

Plaintiffs cursorily contest these rates but offer no specific objections. (Pls.' Trial Resp. (Doc. 28) at 3.) Without any evidence that the requested rates are not reasonable, but with two sworn statements averring that the rates are reasonable,[17] the court finds the requested rates are reasonable.

---

[17] The fact that one of those declarations is from Benchmark's own general counsel, Mr. Johnston, does raise questions about his objectivity. But Mr. Stafford also stated he believed that H&K's requested times and rates were reasonable. (Stafford Aff. (Doc. 31) ¶ 10.)

This finding is supported by Mr. Stafford's affidavit as a disinterested party and experienced North Carolina commercial litigator. The rates are also justified by the experience and accolades of each respective attorney involved in this action. The court is also familiar with rates for similar actions in this market and does not find the requested rates are outside that range. This conclusion is consistent with similar actions in this district. See Fisher-Borne v. Smith, No. 1:12CV589, 2018 WL 3581705, at *3-4 (M.D.N.C. July 25, 2018). The court now turns to the time expended.

### 2. Reasonable Time Spent

Defendants claim they devoted 371.1 hours to this matter, but only billed 339.4. (Defs.' Trial Summ. (Doc. 39) at 5.) Plaintiffs' primary contention as to the reasonableness of the requested trial fees is that the amount is "four to five times the amount of fees incurred by the Plaintiffs, which brings into question the reasonableness of the time and labor expended, as well as the billing rates." (Pls.' Trial Resp. (Doc. 28) at 3.) Plaintiffs do not offer any timesheets or sworn declarations of their own. Plaintiffs also argue that the time Defendants spent pursuing the Motion for Sanctions should not be included since this court denied that motion. (Id. at 3-4.) The court begins by addressing the time spent on the Motion for Sanctions, finding

-36-

that a reasonable amount of time dedicated to the Motion for Sanctions should be included in the total.

### a. __Motion for Sanctions__

The court finds that Defendants are not barred from recovering for reasonable time spent on the Motion for Sanctions, (Doc. 13), though the court cannot determine at this juncture if the time devoted to the motion was reasonable. No North Carolina court has analyzed N.C. Gen. Stat. § 6-21.6 and the issue of unsuccessful motions, but at least one court has analyzed the statute and as it pertains to unsuccessful claims. Insight Health Corp., 2018 WL 3327799, at *3.

Federal courts have addressed whether fees spent on unsuccessful motions are recoverable. In this case, state law governs the interpretation of the parties' attorneys' fees provision, but North Carolina courts find the reasoning of federal courts "instructive." Hamilton v. Memorex Telex Corp., 118 N.C. App. 1, 16, 454 S.E.2d 278, 286 (1995) (citing Hensley, 461 U.S. 424). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . . [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley, 461 U.S. at 435.

-37-

The Hensley Court noted that an award of fees is appropriate "for time spent pursuing [a denied] motion [if] the plaintiffs 'substantially advanced their clients' interests' by obtaining 'a significant concession from defendants as a result of their motion.'" Id. at 430-31 (quoting Stanford Daily v. Zurcher, 64 F.R.D. 680, 684 (N.D. Cal. 1974), aff'd, 550 F.2d 464 (9th Cir. 1977), rev'd on other grounds, 436 U.S. 547 (1978));[18] see also Uniroyal Goodrich Tire Co. v. Mut. Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Were we to deem unreasonable the reimbursement of fees incurred for [colorable but unsuccessful motions], we would be discouraging the type of representation attorneys are duty-bound to provide."); Wales v. Jack M. Berry, Inc., 192 F. Supp. 2d 1313, 1321 (M.D. Fla. 2001). For that reason, "[t]he mere failure of certain motions . . . is insufficient to warrant a fee reduction under Hensley."

---

[18] The Hensley Court also noted that Stanford Daily was cited with approval in the legislative history of 42 U.S.C. § 1988. Hensley, 461 U.S. at 429-30.

Blum v. Witco Chem. Corp., 829 F.2d 367, 378 (3d Cir. 1987);[19]

Bd. of Educ. of Frederick Cty. v. I.S. ex rel. Summers, 358 F.
Supp. 2d 462, 469 (D. Md. 2005) (citing Blum for the proposition
that time spent on unsuccessful motions are not per se
unrecoverable); see also Fish v. St. Cloud State Univ., 295 F.3d
849, 852 (8th Cir. 2002) (finding district court did not abuse
its discretion in declining to reduce lodestar for "unsuccessful
motion practice"); Air Transp. Ass'n of Can. v. F.A.A., 156 F.3d
1329, 1335 (D.C. Cir. 1998) ("Rare, indeed, is the litigant who
doesn't lose some skirmishes on the way to winning the war."
(quoting Cabrales v. Cty. of L.A., 935 F.2d 1050, 1053 (9th Cir.
1991))); cf. Zisumbo v. Ogden Reg'l Med. Ctr., 801 F.3d 1185,
1208 (10th Cir. 2015), cert. denied, ____ U.S. ____, 136 S. Ct.
1660 (2016) (finding district court did not abuse its discretion

---

[19] In Blum v. Witco Chemical Corp, as in the present case,
the party opposing the award of fees did not

> identify for the court any factual dispute or pinpoint
> any specific area where a hearing would have been
> helpful. Rather, . . . counsel simply challenged the
> fee request on the grounds of reasonableness of the
> number of hours billed, particularly objecting to
> hours billed in connection with unsuccessful motions
> . . . .

Blum, 829 F.2d 367, 378 (3d Cir. 1987).

in declining to award attorneys' fees for unsuccessful motion with improper purpose).[20]

Accordingly, district courts in this circuit award fees for unsuccessful motions if the moving party was successful on the underlying claim and the motion advanced that claim in some permissible way. Compare Hair Club for Men, LLC v. Ehson, Civil Action No. 1:16-cv-236, 2017 WL 1250998, at *9 (E.D. Va. Apr. 3, 2017) (interpreting Virginia law and finding that a "[c]ourt may award fees for unsuccessful motions to the extent that the motions were necessary and Plaintiff was ultimately successful on the claims underlying the motions"), and Plant Genetic Sys., N.V. v. Mycogen Plant Scis., Inc., No. 1:95CV741, 2012 WL 4511263, at *7 (M.D.N.C. Sept. 28, 2012), and Cross v. Fleet Reserve Ass'n Pension Plan, Civil No. WDQ-05-0001, 2010 WL 3609530, at *8 (D. Md. Sept. 14, 2010), amended in part, No. Civil No. WDQ-05-0001, 2010 WL 4809126 (D. Md. Nov. 19, 2010) ("Because the hours spent on these activities does not appear

---

[20] To underscore the point that a motion's success is not determinative of whether fees are recoverable, even unfiled motions may qualify for an award of attorneys' fees. "Although the Fourth Circuit does not appear to have squarely addressed the issue, courts have held that time spent on unfiled motions may be compensable where a plaintiff shows that the motion was prepared to advance the litigation." Fisher-Borne, 2018 WL 3581705, at *9 (citing Alvarez v. Haywood, NO. 1:06-CV-745 (FJS/DRH), 2011 WL 13130851, at *10-11 (N.D.N.Y. Aug. 29, 2011)).

-40-

excessive and these efforts — though unsuccessful — were not
unreasonable or in bad faith, no reduction to these entries will
be made."), with Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of
Elections, Nos. 5:15-CV-156-D, 5:13-CV-607-D, 2017 WL 4400754,
at *8 (E.D.N.C. Sept. 29, 2017) (reducing fees for failed motion
to amend complaint), and Design & Prod. Inc. v. Am. Exhibitions,
Inc., No. 1:10-cv-899, 2011 WL 6002598, at *1 (E.D. Va. Nov. 30,
2011) (reducing fees for unsuccessful motion for which moving
party was sanctioned).

Turning back to Defendants' Motion for Sanctions, although
Defendants did not prevail on the Motion for Sanctions, overall
they obtained "excellent results." Hensley, 461 U.S. at 435.
When calculating fees, "the most critical factor is the degree
of success obtained." Id. at 436; Out of the Box Developers, LLC
v. Doan Law, LLP, No. 10 CVS 8327, 2014 WL 4298329, at *10 (N.C.
Super. Aug. 29, 2014). Here, Defendants defeated all of
Plaintiffs' claims at or before the motion-to-dismiss phase.

Still, the court cannot conclude that the Motion for
Sanctions led directly to the dismissal of any claims by

Plaintiffs.[21] The court can say that the motion was part of an overall litigation strategy that was successful. Reviewing the timesheets for both MVA and H&K reveals that preparation of the Rule 11 motion was interwoven with other litigation tactics. (See, e.g., MVA Timesheets (Doc. 33-1) at 9–10; H&K Timesheets (Doc. 38-1) at 17.) That litigation strategy led to success for Defendants, supporting the inference that the motion, though denied, advanced Defendants' interests in some way. Hensley, 461 U.S. at 431. Plaintiffs' conclusory assertion that the motion was over-briefed and unsuccessful is not persuasive. See Plant Genetic Sys., 2012 WL 4511263, at *7 ("Plaintiff claims Defendants should not recover fees associated with this motion because it was denied and because Plaintiff claims it to have been 'over-briefed.' This court finds Plaintiff's argument in this regard to be conclusory and unpersuasive.").

Further, though the court is not aware of any North Carolina court that has addressed awarding fees for unsuccessful motions, those courts have addressed related claims, an

---

[21] The court previously noted that it declines to draw an adverse inference as it specifically pertains to Plaintiffs' decision to withdraw the Civil RICO claim following Defendants' Motion for Sanctions. See Carpet Super Mart, 2019 WL 1244086, at *5 n.6. The reason the court then stated holds, and the court will therefore not draw such a specific adverse inference. A broader inference, however, is appropriate.

analogous area. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the [fact finder] did not adopt each contention raised." Insight Health Corp., 2018 WL 3327799, at *3 (citing Hensley, 461 U.S. at 440). Related claims share a common nucleus of operative facts when "each claim [is] inextricably interwoven with the other claims[.]" Id. (quoting Whiteside Estates, Inc., v. Highlands Cove, L.L.C., 146 N.C. App. 449, 467, 553 S.E.2d 431, 443 (2001)). Defendants' Motion for Sanctions is not a claim, but it was "inextricably interwoven with" the arguments made by Defendants in their Motion to Dismiss. (Compare Doc. 14, with Doc. 8.) This analogy, though imperfect, suggests that Defendants should be allowed to recover for some part of their work on the Motion for Sanctions.

In light of the foregoing analysis, this court finds that Defendants should be permitted to recover fees for a reasonable amount of time dedicated to the Motion for Sanctions. Given the level of redaction in Defendants' timesheets, however, the court is presently unable to determine if the time dedicated to the Motion for Sanctions was reasonable. Further, and as noted above, fees spent pursuing unsuccessful motions are reasonable to the extent the motion advanced the litigation. See Hensley, 461 U.S. at 431; Raleigh Wake Citizens Ass'n, 2017 WL 4400754,

-43-

at *8; <u>Hair Club for Men</u>, 2017 WL 1250998, at *9; <u>Plant Genetic</u>
<u>Sys.</u>, 2012 WL 4511263, at *7; <u>Design & Prod.</u>, 2011 WL 6002598,
at *1; <u>Cross</u>, 2010 WL 3609530, at *8. While the Motion for
Sanctions appears to have advanced the litigation in some way,
it is not clear to what extent it did. A fuller record is needed
before the court can make that determination.

b.   **Total Time Spent**

Including the time for the Motion for Sanctions, the
Defendants request they receive fees for 339.4 hours of the
371.1 devoted to the matter in the trial court. (Defs.' Trial
Summ. (Doc. 39) at 5-8.)

Mr. Baruch declares that H&K devoted 317.7 hours to this
matter but only billed for 286. (Baruch Decl. (Doc. 38) ¶ 11.)
These figures, however, do not match the timesheets H&K
provided. The totals from the H&K timesheets do list 317.7 hours
of labor expended, yet they show only 240.7 hours billed. (H&K
Timesheets (Doc. 38-1) at 28.) Mr. Baruch states that some of
the H&K timesheets provided were generated before the client was
billed. (Baruch Decl. (Doc. 38) ¶ 11.) It is possible the total
hours billed had not caught up with the timesheets when they
were generated; however, it is not clear from the timesheets
actually submitted to the court how this discrepancy should be
addressed.

-44-

It is the moving party's burden to show they are entitled to an award of fees, see Hensley, 461 U.S. at 437, and Defendants have not adequately explained the difference between Mr. Baruch's figures and those on the timesheets. Since H&K did not provide a breakdown of billed hours by attorney or a clear explanation of where they had already made discounts, the court is unable to reconcile Mr. Baruch's figures with the H&K timesheets provided. Without any additional evidence or guidance from H&K, the court will start at 240.7 hours for H&K, the number of hours actually listed as having been billed. (H&K Timesheet (Doc. 38-1) at 28.)

MVA billed 66.7 hours between two attorneys. (See generally MVA Timesheets (Doc. 33-1).) MVA requested compensation for two individuals, Lynn Holder and Jennifer Braccia, but did not provide any background evidence from which the court can find that the requested rates and time are reasonable. (See MVA Timesheets (Doc. 33-1) at 4, 14.) In fact, Defendants did not provide any evidence explaining who these individuals are or what they do. The court therefore does not include the time billed by those individuals in MVA's total. MVA also included time spent on appellate tasks in its request for trial fees. On appellate tasks, Ms. Clay billed 3.6 hours, and Mr. Butler billed 4.4 hours. (Id. at 19-20, 22-23.) The court will reduce

-45-

MVA's billed time by 8 hours. This leaves MVA's total trial-level hours at 58.7.

Combining the MVA billed time with H&K's billed time, the total hours billed for trial-level work is 299.4 hours. 226.3 of those hours were dedicated to tasks completed up to and including the filing of Defendants' Reply Brief for their Motion to Dismiss. The remaining 73.1 hours were dedicated to tasks supporting the Motion for Trial Attorneys' Fees, including the collection of declarations, production and redaction of timesheets, consultation with Plaintiffs' counsel, a primary brief, analysis of Plaintiffs' response, and a reply brief. In addition to tasks in support of the motion for attorneys' fees, there was time billed for other tasks and communications regarding Plaintiffs' Amended Complaint and this court's Order and Opinion.

Based on the record before it, the court is unable to determine if 299.4 hours is a reasonable amount of time for the trial-level work done on this matter. Defendants have redacted their timesheets to the point that the court cannot determine what hours were spent on what tasks and/or if the task reasonably related to the litigation. Were the court to make a fee determination on the record before it, it would be required to significantly reduce the requested fees.

-46-

"[T]o determine if the statutory award of attorneys' fees is reasonable the record must contain findings of fact as to the time and labor expended . . . ." <u>WFC Lynnwood I</u>, 259 N.C. App. at 933, 817 S.E.2d at 444 (quoting <u>Cotton v. Stanley</u>, 94 N.C. App. 367, 369, 380 S.E.2d 419, 421 (1989)); <u>Parker</u>, 175 N.C. App. at 742, 625 S.E.2d at 184–85; <u>see also</u> <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 243 (4th Cir. 2009). It is Defendants burden to establish the propriety of their fee request. <u>Hensley</u>, 461 U.S. at 437. "[T]he documentation must be sufficient for the court to verify that the applicant has met its burden." <u>La. Power & Light Co. v. Kellstrom</u>, 50 F.3d 319, 324 (5th Cir. 1995). "While 'counsel is not required to record in great detail how each minute of his time was expended at least counsel should identify the general subject matter of his time expenditures.'" <u>Rumsey v. Dep't of Justice</u>, 866 F.3d 1375, 1379 (Fed. Cir. 2017) (alterations in original) (quoting <u>Hensley</u>, 461 U.S. at 437 n.12). "The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." <u>United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n,</u>

Local 307 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 502 n.2 (6th Cir. 1984).

Excessive redaction of timesheets removes information the court needs to determine the reasonableness of a fee request. See Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc. v. Manzo, Case No. 5:10-cv-329-Oc-10PRL, 2015 WL 12830413, at *10 (M.D. Fla. Jan. 14, 2015), report and recommendation adopted sub nom. Am. Home Assurance Co. v. Weaver Aggregate Transp., Inc., Case No. 5:10-cv-329-Oc-10PRL, 2015 WL 12850589 (M.D. Fla. Feb. 26, 2015) ("While reviewing Weaver's invoices, the Court noticed a significant amount of redactions, which made it difficult, if not impossible, to determine the nature of the attorney's task."); In re 50 Pine Co., LLC, 317 B.R. 276, 286 (Bankr. S.D.N.Y. 2004); cf. Bapu Corp. v. Choice Hotels Int'l, Inc., Civ. No. 07-5938 (WJM), 2010 WL 2245600, at *2 (D.N.J. June 1, 2010) (noting that the level of redaction did not prevent court from discerning what tasks were billed). A more common issue is block billing which, like excessive redaction, can remove the details a court needs to accurately assess the reasonableness of a fee request. See, e.g., Raynor v. G4S Secure Sols. (USA) Inc., 327 F. Supp. 3d 925, 949 (W.D.N.C. 2018), aff'd, 805 F. App'x 170 (4th Cir. 2020); see also In re Olson, 884 F.2d 1415, 1428 (D.C. Cir. 1989); Project Vote/Voting for

-48-

<u>Am., Inc. v. Long</u>, 887 F. Supp. 2d 704, 716–17 (E.D. Va. 2012); <u>Uzzell v. Friday</u>, 618 F. Supp. 1222, 1226 (M.D.N.C. 1985).

With the current redactions, Defendants' documentation is not "sufficient for the court to verify that the applicant has met its burden." <u>La. Power & Light</u>, 50 F.3d at 324. For example, in H&K's timesheets, Mr. Baruch has an entry for April 11, 2018, that contains the following description: "Review factual background, finalize draft of demand letters and correspondence with [REDACTED] re: same." (H&K Timesheets (Doc. 38-1) at 2.) The omission of the name of the person involved in the conversation makes it impossible to know if the work was reasonably related to the matter. The court notes similar issues with Mr. Baruch's second entry on April 23, 2018: "Review newly filed complaint, assist in analysis regarding [REDACTED]; prepare for and conduct phone conference with plaintiffs' counsel re: initial litigation and settlement issues; draft settlement demand to plaintiff's counsel; advise re: [REDACTED]." (<u>Id.</u> at 3.) Mr. Palermo's redactions present similar issues, often noting that he researched case law and statutes, but redacted the portions specifying the issue he was specifically researching. (<u>See, e.g.</u>, <u>id.</u> at 2, 22.) These redactions prevent the court from assessing the reasonableness

-49-

of the fee request.[22] For that reason, the court directs the parties to proceed as outlined in the Conclusion of this opinion.

## B. **Appellate Fees**

The court is unable to determine a reasonable appellate fee award based on the record before it. Due to redaction issues, the court cannot determine whether the time expended on appellate tasks was reasonable, though it can determine if the requested billing rates are reasonable. As with the trial fees, the court will direct the parties to confer further as described in the Conclusion of this Memorandum Opinion and Order.

---

[22] As one example of the effect of the redactions, the court cannot determine if Defendants spent a reasonable amount of time on their fee petition. Parties are permitted to recover fees for time spent preparing a fee petition, so long as the amount of time is reasonable. See E.E.O.C. v. Serv. News Co., 898 F.2d 958, 966 (4th Cir. 1990) ("The expenditure of over twenty percent of the claimed time on fee preparation would appear to be unreasonable under the circumstances."); United Supreme Council v. United Supreme Council of Ancient Accepted Scottish Rite for 33 Degree of Freemasonry, Civil No. 1:16-cv-1103, 2019 WL 3848784, at *5 (E.D. Va. Aug. 15, 2019) (finding that dedicating 8% of total time to preparation of fee petition was excessive); Kabore v. Anchor Staffing, Inc., Civil Case No. L-10-3204, 2012 WL 5077636, at *6 (D. Md. Oct. 17, 2012) (noting that 9.8 hours out of a requested 413.1 was not excessive for work on a fee petition). Defendants' redactions, however, make it impossible to determine if they dedicated a reasonable or unreasonable amount of time on this or any other part of the litigation. (See, e.g., MVA Timesheets (Doc. 33-1) at 16.)

After the Fourth Circuit affirmed this court's dismissal of Plaintiffs' Complaint, Defendants moved for an award of fees generated during the appellate phase of this suit. (Doc. 42.) Many of the attorneys who represented Benchmark at the trial level continued to represent Benchmark during the appeal. For MVA, Ms. Clay and Mr. Butler continued their representation. Second Declaration of M. Cabell Clay ("Second Clay Decl.") (Doc. 54 ¶ 6.) In addition to Ms. Clay and Mr. Butler, Scott Tyler of MVA also worked on the appeal. (Id.) Mr. Tyler graduated from Duke University School of Law in 1995 and, since 1996, has practice law with MVA in North Carolina. (Declaration of Scott M. Tyler ("Tyler Decl.") (Doc. 55) ¶¶ 3-4.) Mr. Tyler's practice focuses on business tort litigation, in addition to other areas. (Id. ¶ 4.)

For H&K, Mr. Baruch and Mr. Palermo continued to represent Benchmark at the appellate level. (Second Declaration of Jason H. Baruch ("Second Baruch Decl.") (Doc. 52) ¶ 8; Second Declaration of Anthony J. Palermo ("Second Palermo Decl.") (Doc. 53) ¶ 7.) Mr. Punzone was not involved in the appeal. (See Defs.' Suppl. Mem. in Supp. of Mot. for Appellate Attorneys' Fees and Costs ("Defs.' Appeal Summ.") (Doc. 57) at 7.) In support of the requested rates and hours, Defendants once again

-51-

provide an affidavit from Mr. Stafford. (Second Affidavit of Mark A. Stafford ("Second Stafford Aff.") (Doc. 51).)

Defendants request the following billing rates: For Ms. Clay, $405 per hour; for Mr. Butler, $300 per hour; for Mr. Baruch, $435 per hour; and for Mr. Palermo, $360 per hour. (Defs.' Appeal Summ. (Doc. 57) at 7.) Mr. Stafford continues to aver that these rates are reasonable both for the legal markets and type of work. (Second Stafford Aff. (Doc. 51) ¶¶ 3-5.) The court has addressed the qualifications of these attorneys and continues to find these rates reasonable. The court has not addressed Mr. Tyler's requested rate of $525 per hour. Given Mr. Tyler's extensive experience in commercial litigation, and considering the averments of Mr. Stafford and the court's own knowledge of local billing rates, see Design Res., Inc. v. Leather Indus. of Am., No. 1:10CV157, 2016 WL 5477611, at *10 (M.D.N.C. Sept. 29, 2016), the court finds that Mr. Tyler's rate of $525 per hour is also reasonable, (Defs.' Appeal Summ. (Doc. 57) at 7; Tyler Decl. (Doc. 55) ¶ 4).

Though the rates are reasonable, the court once again cannot determine if the time dedicated to appellate tasks is

reasonable.[23] Defendants' redactions are such that the court cannot determine what time was dedicated to what tasks. For that reason, as with the trial fees, the court will defer its judgment, pending the process outlined below, as to the reasonableness of the requested award.

## IV.  **CONCLUSION**

In order to determine a reasonable amount of fees, the court directs the next steps.

Defendants have offered to file unredacted time entries to their contemporaneously filed declarations for the court's in camera review upon request. (Defs.' Trial Summ. (Doc. 39) at 11 n.10; Defs.' Appeal Summ. (Doc. 57) at 12 n.7.) That review would exclude Plaintiffs' counsel from the review process. At this time, this court declines that request. Though an in camera review has been used by courts assessing timesheets and fee requests, see Dreher v. Experian Info. Sols., Inc., Case No. 3:11-cv-624, 2016 WL 4055638, at *3 (E.D. Va. July 26, 2016), the court is not aware of any authority requiring it to choose that option at this time, nor did Defendants address that in

---

[23] In addition to redaction issues, the court notes that Defendants have provided timesheets including considerable work done by attorneys who have provided no declarations and whom Defendants do not mention in their briefing.)

-53-

their briefs. And though Plaintiffs have offered a tepid defense against the fee request,[24] it is ultimately this court's responsibility to determine if the fee request is reasonable. To fulfill its duty, the court directs the following next steps:

(1)  The court will take the issue of the amount of the award, both for trial and appellate fees, under advisement for a period of 60 days. Within 45 days of the issuance of this Memorandum Opinion and Order, the parties are directed to confer and determine if there is an amount for trial and appellate fees to which they can agree. If so, the court will adopt a consented-to award. Such an agreement by Plaintiffs, if it should arise, would necessarily be without prejudice as to the objections raised as to whether fees should be awarded in the first instance.

(2)  If an agreement still cannot be reached, Defendants shall determine whether they wish for the court to proceed to a

---

[24] Other courts raising issues with redacted timesheets have dealt with plaintiffs who raised their own objections to specific time entries and billing issues, something Plaintiffs here have not done. See Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 544 (9th Cir. 2016). Nevertheless, this court has serious concerns about proceeding with an in camera review of redacted timesheets even if such a process has been used in other cases.

final ruling on the record as it currently stands.[25] If an agreement cannot be reached, and Defendants do not wish this court to make a determination on the record before it, it shall so advise this court via written notice. That notice shall simply state that the parties have failed to reach an agreement and that Defendants do not wish the court to make a determination based on the redacted records before it. If such notice is provided, the court will provide further directions, mindful of the fact that "[c]ourts have often observed that litigation over attorneys' fees should not become a separate trial unto itself." See Dreher, 2016 WL 4055638, at *3. For that reason, the court will not entertain any further briefing on the issue of attorneys' fees.

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motions for Award of Attorneys' Fees and Costs, (Docs. 24, 42), are **GRANTED** insofar as the court finds fees should be awarded to Defendants for trial and appellate work and that the requested rates are reasonable. The court will defer

---

[25] The court notes again that, based on the record before it, it cannot find 299.4 hours is a reasonable amount of time for what was a basic contract dispute that never proceeded past the 12(b)(6) phase, nor could it find that more than $60,000 in appellate fees is reasonable for an appeal that involved no oral argument and was affirmed in a short, unpublished opinion by the Fourth Circuit. An award based on the redacted timesheets would be reduced.

ruling on what fee award is reasonable pending the process
outlined in this section.

This the 5th day of August, 2020.

_____
United States District Judge